UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
               :
CHARLES WATSON,
               :
         Plaintiff,         :      11 Civ. 2415 (WHP)
               :
    -against-             :      MEMORANDUM & ORDER
               :
R. JOYCE CARVER-JORDAN, et al.,
               :      USDC SDNY
         Defendants.        DOCUMENT
               :      ELECTRONICALLY FILED
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X      DOC #:_____
                                  DATE FILED: 12/13/11

WILLIAM H. PAULEY III, District Judge:

     Plaintiff Charles Watson ("Watson"), a New York state inmate, brings this federal civil rights action against several prison officials ("Defendants"), alleging inter alia that they unlawfully transferred him to a less desirable prison facility in retaliation for his long history of complaints regarding prison policy. Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, Defendants' motion is granted and the sixth cause of action in Watson's Third Amended Complaint ("Compl.") is dismissed with prejudice.

## BACKGROUND

     In October 2008, while incarcerated at Attica Correctional Facility, Watson sought a transfer to a correctional facility closer to New York City. (Compl. ¶ 47.) Prison officials accommodated Watson's request and assigned him to Green Haven Correctional Facility in Stormville, New York ("Green Haven"), which is 250 miles closer to New York City. (Compl. ¶ 47.) As a condition of the transfer to this more convenient—and thus more

crowded—facility, prison officials asked Watson to waive his privilege to reside in a single occupancy cell. (Compl. ¶ 47.) On October 22, 2008, Watson signed a Pre-Transfer Double Cell Waiver. (Compl. ¶ 47; see also Plaintiff's Opposition to Motion for Judgment on the Pleadings, dated Aug. 12, 2011 ("Watson Br."), Ex. A1.) By signing the waiver, Watson agreed to be assigned to the first available bed at Green Haven, with the understanding that it might be in a double occupancy cell. (Watson Br., Ex. A1.) The waiver further provided that Watson would not be assigned to a double occupancy cell for more than sixty days without his consent. (Watson Br., Ex. A1.)

In February 2009, Watson was transferred to a double occupancy cell at Green Haven. (Compl. ¶ 47.) After arriving at the new facility, he learned that the waiting list for a single occupancy cell was eight to nine months. (Compl. ¶ 47.) Because the wait for a single cell exceeded sixty days, prison officials informed Watson that he would have to sign another waiver in order to remain at the facility for longer than sixty days. (Compl. ¶ 47.)

In March 2009, Watson lodged a grievance with the New York State Department of Corrections and Community Supervision ("DOCS"), asserting that Green Haven's policy of transferring inmates who refused to reside in double occupancy cells was vindictive, retaliatory, and in violation of Title 7 § 170.7(d) of the New York Codes, Rules, and Regulations ("NYCRR"). (Compl. ¶ 48.) NYCRR § 1701.7(d) provides that, after volunteering to reside for sixty days in a double occupancy cell, a prisoner must—absent another waiver—be transferred to a single occupancy cell at the current facility or elsewhere. See 7 NYCRR § 1701.7(d).

On March 26, 2009, Watson's prison counselor asked him to sign an indefinite waiver of his single occupancy privilege in order to remain at Green Haven. (Compl. ¶ 49.)

When Watson refused to sign the waiver, his counselor told him that he would be transferred to another facility as a result. (Compl. ¶ 49.) Watson then lodged a second grievance with DOCS, renewing his allegations about the illegality of the transfer policy. (Compl. ¶ 50.) On April 24, 2009, Defendant R. Joyce Carver-Jordan—Green Haven's Director of Inmate Classification and Movement—answered Watson's complaint but failed to address his concerns. (Compl. ¶¶ 13, 50; Watson Br., Ex. D.) Carver-Jordan also informed Watson that the prison had already begun the process of transferring him to another facility. (Watson Br., Ex. D.)

Watson alleges that, on April 27, 2009, Defendant R. Cunningham—the Deputy Superintendent of Programs at Green Haven—told him that Green Haven transferred non-volunteering prisoners to encourage prisoners to volunteer. (Compl. ¶¶ 15, 51.) Cunningham also allegedly told Watson that if he "continued to write letters and grieve [he] really wouldn't like where he would be sent." (Compl. ¶ 51.)

On May 4, 2009, prison officials temporarily transferred Watson to a single occupancy cell at Green Haven for medical reasons. (Compl. ¶ 52; Watson Br., Ex. H.) Watson then wrote to DOCS Commissioner Fischer indicating that his complaint had been satisfied. (Compl. ¶ 52.) In the same letter, Watson asked Fischer to cancel the pending transfer and permit him to stay indefinitely at Green Haven in a single occupancy cell. (Compl. ¶ 52.) On May 27, 2009, Defendant Theresa Knapp-David—an Associate Commissioner at DOCS—declined to cancel the transfer. (Compl. ¶¶ 16, 53; Watson Br., Ex. F.)

Watson subsequently learned that he would be transferred to Five Points Correctional Facility in Romulus, New York, the only general confinement Max A correctional facility in the DOCS system without single occupancy cells. (Compl. ¶ 53; Memorandum of

Law in Support of Defendants' Motion for Judgment On the Pleadings, dated July 27, 2011, at 2 n.2.) Watson complained about the move to prison officials and then-Governor David Paterson. (Compl. ¶ 54.) But these officials declined to halt the transfer. (Compl. ¶ 55.)

Shortly thereafter, Watson initiated a state court proceeding under Article 78 of the New York Civil Practice Law and Rules, seeking an order enjoining his transfer to Five Points and directing that he be placed in a single occupancy cell. (Watson Br., Ex. J.) On August 4, 2009, while the Article 78 proceeding was pending, Watson was transferred to Five Points. (Compl. ¶ 55.) In an order dated September 14, 2009, the presiding administrative law judge in the Article 78 proceeding enjoined Watson's transfer, directed DOCS to house him in a single occupancy cell, and directed DOCS to consider placing Watson in a facility in the New York City area. (Watson Br., Ex. J.) On October 15, 2009, DOCS transferred Watson to Clinton Correctional Facility in Dannemora, New York. (Compl. ¶ 56.)

Watson commenced litigation in the United States District Court for the Western District of New York, alleging a potpourri of federal civil rights violations including denial of medical care, denial of the opportunity to participate in medical trials, and retaliatory transfer. Then, in something akin to mitosis, Watson's complaint was permitted to metastasize into two parallel actions—one in the Western District and another here in the Southern District of New York. Throughout this metamorphosis, Watson has been housed at various DOCS facilities in the Northern District of New York. Yet, by order dated March 24, and without testing the sufficiency of the Third Amended Complaint, the Western District of New York transferred the retaliatory transfer claim—Watson's sixth cause of action—to this Court.

## DISCUSSION

I. Legal Standard

Courts evaluate a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. See Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Accordingly, this Court accepts all non-conclusory factual allegations in the complaint as true and draws all reasonable inferences in Watson's favor. See Bank of N.Y., 607 F.3d at 922; see also Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). This Court may also consider documents attached as exhibits to the complaint or incorporated by reference. See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir.1996). A complaint that fails to state a plausible claim to relief will not survive a Rule 12(c) motion. See Bank of N.Y., 607 F.3d at 922.

A pro se litigant's submissions are held to "less stringent standards than [those] drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions 'to raise the strongest arguments they suggest.'" Berlin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, this Court need not accept as true "conclusions of law or unwarranted deductions of fact." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994). And courts must assess prisoner retaliation claims with "skepticism and particular care." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

II.     Retaliatory Transfer

Watson claims that Defendants transferred him to Five Points—the only DOCS facility without single occupancy cells—in retaliation for his history of complaining about prison policy. To state a claim for retaliatory transfer, an inmate must show (1) that he engaged in constitutionally protected conduct and (2) that his protected conduct was a "substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003). Accordingly, to survive a motion for judgment on the pleadings, a prisoner's complaint must contain non-conclusory factual allegations that, accepted as true, show that his protected conduct was a "substantial or motivating factor for the adverse actions taken by prison officials." Bennett, 343 F.3d at 137; see also Bank of N.Y., 607 F.3d at 922. Even construed liberally, Watson's complaint is bereft of such allegations.

Watson's sole non-conclusory allegation of retaliatory motive is that Defendant Cunningham told him that if he did not stop making complaints, he "really wouldn't like where he would be sent." (Compl. ¶ 51.) But Cunningham's statement does not plausibly support Watson's claim. While Watson hoped to remain in Green Haven, prison policy dictated that he could not remain in that facility without signing a double occupancy waiver. As such, Cunningham was correct that if Watson did not stop complaining about residing in a double occupancy cell and sign a waiver, he would, under governing prison regulations, be moved to a location other than Green Haven.[1] And that is precisely what happened.

---

[1] While the Administrative Law Judge in Watson's Article 78 proceeding subsequently enjoined Watson's transfer to Five Points, this decision has no bearing on whether Defendants transferred Watson to that facility with the requisite retaliatory motive.

More importantly, Watson does not allege that Cunningham had any role in transferring him to Five Points. Indeed, the decision to transfer Watson from Green Haven to another facility was made before Cunningham advised Watson to stop complaining, thus defeating any plausible inference of retaliatory motive. (Watson Br., Ex. D.) And Watson's complaint contains only conclusory factual allegations regarding the supposedly retaliatory motives of the other Defendants. Thus, Watson's retaliatory transfer claim fails.

III.   Leave to Amend

While leave to amend is freely granted, such leave is not granted where amendment would be futile. See In re Lehman Brothers Mortgage-Backed Sec. Litig., 650 F.3d 167 (2d Cir. 2011). Because Watson no longer resides at Five Points, any request for injunctive relief stemming from his transfer to that facility would be moot. See Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996). While Watson also seeks money damages, he does not claim that he suffered physical injuries in connection with his transfer to Five Points—nor can he, given the nature of his allegations. Under the Prison Litigation Reform Act of 1995, a prisoner may not recover for mental or emotional injuries unless he has shown physical injury. See 42 U.S.C. § 1997(e); see also Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999). Because Watson will not be able to make such a showing, any amendment would be futile. Accordingly, Watson's sixth cause of action is dismissed with prejudice.

CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is granted and the sixth cause of action in Watson's Third Amended Complaint is dismissed with prejudice. The Clerk of the Court is directed to terminate all pending motions and mark this case as closed.

Dated: December 13, 2011
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Copies mailed to:*

Charles Watson
03-A-2302
Greene Correctional Facility
165 Plank Road, P.O. Box 975
Coxsackie, New York 12051-0975
*Plaintiff Pro Se*

George Michael Zimmermann, Esq.
Office of the New York State Attorney General
Main Place Tower
Suite 300A
350 Main Street
Buffalo, NY 14202

Julia Hyun-Joo Lee, Esq.
New York State Department of Law
120 Broadway, 24th Floor
New York, NY 10271
*Counsel for Defendants*